Thank you, Your Honor. May it please the Court, I intend to argue for ten minutes and my co-counsel will argue for five. My name is Joe Harrington. I'm an assistant U.S. attorney for the Eastern District of Washington. That's Spokane. The United States respectfully submits that the District Court erred in this case by dismissing the superseding indictment that was returned by a grand jury in the Eastern District of Washington. That superseding indictment charged the defendants with four counts of mail fraud and one single count of conspiracy to commit mail fraud. Could you help me with something on the statute? First, I know that the Supreme Court may be speaking to this this term, and we'll leave that aside because we don't know what they'll say. Second, most of the courts have required a fiduciary duty for honest services fraud. It has never really been clear to me just how to use that or why. And the reason is that the statute doesn't say fiduciary duty and common law fraud doesn't require a fiduciary duty. However, what I think most courts fear with honest services fraud is that a U.S. attorney who wants to be governor could use it overly aggressively or politically. A few weeks people be spending their time in government offices exchanging cookies at little office Christmas parties instead of working. Are they depriving the government of honest services? Can the boss who lets that go on in his little department be charged by a U.S. attorney who wants to get him and a boss who's made himself unpopular somehow because he's depriving the government of honest services? What do we do about fiduciary duty and how do we limit honest services fraud so it can't be abused if we follow your argument and don't require fiduciary duty? Thank you, Your Honor, and I would respectfully submit as an initial comment that, respectfully, I don't believe that this case, the facts of this case, would be the type of facts that would be pushing the envelope. That is certainly true. This case just cries out for abandoning fiduciary duty. However, how do you write it so that we don't invite the highly political U.S. attorney to abuse it in the way I described hypothetically? And I think that the cases have looked to the factors that will cabin the reach of the mail fraud statute. It's important to emphasize that Congress had to write the statute broadly enough to make sure that it would encompass all types of fraudulent activity because the concern is that if the statute itself was somehow more specifically defined, people would then act in conformity with the spirit of law. So is the only limit to indictments the discretion of the U.S. attorney? No, Your Honor, and that's where it gets to the point is that the statute itself defines, first of all, a scheme to defraud. So that's a limiting factor is there must be a scheme to begin with. And the second and important limiting factor, which has been recognized, I believe, by this court and other circuit courts throughout the country, is that there must be an intent to defraud. Well, we're still looking for a limiting principle. I think the question is you might be trying to read it in the word defraud, but defraud is just fundamentally mislead. And the question is if you throw a Christmas party and let your employees out early or something because you want to be popular, you're depriving the government of their services, could that not be fit within scheme to defraud? Well, it was a plan. It deprived the government of the services, and we still don't have a limiting principle that keeps this from being applied in extreme situations. Well, I think the court would have to look to determine, based on the facts and circumstances, which drives all of these cases for honest services fraud, to determine whether, in fact, there was a scheme or artifice to begin with. Well, you've got a scheme. It's been spelled out. You agree with your assistant manager that you're going to do X. You're going to let all your employees go home early. There is a scheme. You're going to defraud the government of its services, and that could even be financial fraud, never mind honest services, because the government is going to be paying for the employees, so maybe your scheme was actually intended to deprive them of money, not honest services even, on your theory. Yes, I understand. And recognizing that it's a difficult concept, and I think the courts have struggled with trying to find some sort of limiting proposition, but, again, I think it comes back to that specific, and it's got to be a specific intent to defraud. The mail fraud statute is a specific intent crime. Well, may I just try this one last time, maybe for myself? It can't be specific intent that's going to save you, because I've got the specific intent to throw a party and let my employees out. That's really not difficult to overcome if you can't figure out a limiting principle with regard to what counts as a deprivation of honest services or financial fraud, as the case may be. I mean, we're right back in the first year of law school, and professors had funds with slippery slopes. Well, we're on a slope here, and I think everyone has agreed that, okay, Congress doesn't mean to cover the universe and make that criminal, and the courts have been left with the task of trying to figure out where's the limit, where do you find a fence, where can you draw a line. It may well be that this case falls pretty far on one side of a line, but unless there's a line someplace, the argument is being made the only place to put that fence is at the top of the hill, because otherwise you're going to wind up sliding down that slope. And it may be that you have nothing to suggest to us, but it seems to me we're going to have to write an opinion that says something. I understand. Why shouldn't you limit it to fiduciary duty? I don't mean in the trust sense, but why should you limit it to employees, officers, trustees, agents, actual agents? Why shouldn't you limit it to all the standard common law concepts of who owes a special heightened duty to somebody else? Why shouldn't it be limited that way? Well, because I think that the common law theory or the common law definition of fiduciary duty has always been somewhat unclear, and I think the cases say that a trust relationship or a relationship where there was some sort of a heightened duty of honesty and fair dealing doesn't necessarily go by or is necessarily found by the terms that people use like independent contractor or agent. I think the parties have to look at the underlying relationship between them. Well, you have to see what the person is. Employees can be said to have in fiduciary duty their kind of agent. Employees pretty clearly are not, at least in California, they've expanded into that area. Employees. Officers. That's easy. Officers have that kind of duty. A lawyer for somebody. Well, he's an agent, truly, for the person who has a duty. Generally, one doesn't think of somebody having a special kind of duty just because he enters into a contract. Even if he's going to do big naughty. If he enters into a contract, isn't it a special duty? Of course he has a duty to obey his contract. Well, the interesting and I think unique facts of this case in the context of your question, Judge Fernandez, is that here the defendants, at least Defendant Lamb and Milovanovich, are actually executing the public trust. They are acting. Give me a formula, a verbal formula, words that we could use in an opinion and that district courts could use in an instruction so that government contractor fraud such as this would be covered by the statute and the Christmas party would not be. You must have thought about this a whole lot longer than me. Give me the formula. I would suggest that the formula may include some of this language, that an independent contractor who is exercising the power and the authority to carry on the government's business, be it a state government or federal government or local government, is subject to the honest services, the reach of the honest services statute. It wasn't actually any help. Well, the power and authority in executing decision-making power and authority, which is the case that we have here, these defendants were making decisions about who could or could not obtain commercial driver's licenses, which, of course, had huge impact down the road or downstream about who is going to be driving 18-wheeler semi-trucks. But we know what the factual allegations are, and we know it's really crooked. It's just we need a principled way of articulating this. We can't just pick cases and say, oh, that one's dirty, that one's not. I see my time is running up. If I could just respond to that question. Your Honor, I think that it does come down somewhat to a case-by-case basis. You have to look at the case and the facts and circumstances. I would suggest, however, that one of the factors the court should look to is whether there is decisions being made by a person that's exercising the power and the authority of some sort of governmental agency. Thank you, Counsel. Counsel. Good morning, Your Honors. My name is Joe Knappi, and I represent Defendant Tony Lamb in this matter. And I thought your questions were excellent and really are what we're arguing. You know, the last person who was- I know that. My first thought on reading this case was that it is ridiculous to require a fiduciary duty. If you had a Ford dealer who was putting used parts in and charging everybody for new, well, he doesn't have a fiduciary duty to the customers that bring their cars in for repair, but it's still fraud. And we have telemarketing and mail fraud all the time where there's no fiduciary duty, arms-length commercial relationship, and it's still fraud. I understand. By the way, I'm seven minutes. Thank you, Your Honor. I know. But the last person that would be before this Court arguing that there's some kind of a special relationship that existed in this case would be the State of Washington. The State of Washington in its contract went overboard backwards saying, we don't want anything to do with that. The contract says he's an independent contractor. But it's more than just your writing. It says an independent contractor can commit the grossest, plainest common-law fraud, and it's still not indictable under a statute that says any scheme or artifice to defraud, even though the statute does not say fiduciary. Where are you going to draw the line? I mean, you get back to the very question. Maybe you tell me. You draw the line at a fiduciary or a special employee-employer relationship. Just because they charge them under this crime doesn't mean that there are not other crimes, either State or Federal, that they couldn't be charged under. The prosecutor gets to choose what statute they want to charge these people under. They chose this one. This one does not apply. That doesn't excuse the conduct of the defendants. The State could do something the State doesn't want to do anything. Why is it that you don't need a fiduciary duty for schemes or artifices to defraud when they're directed to money or property but you do for honest services? Because the money and property is the very line that needs to be drawn. Services are so difficult to define. You'll never be able to clearly define where you're going. I mean, it's pretty obvious in this case. The State wasn't swindled because it paid these people and didn't get what was exchanged. The State was swindled because drivers were put on the road with commercial driver's licenses and had no business having them. I was raised in Illinois. As former governor of Illinois, now serving time as a guest to the Federal Government because his office as Secretary of State sold those kind of licenses. This is dangerous business. So why shouldn't we be concerned about a situation like this? You should be concerned. Then why is it the statute shouldn't apply? This is a narrow statute. This is not intended for this type of conduct. What's narrow about a statute that explicitly covers honest services? The statute plainly doesn't draw the line where you did because that's where the Supreme Court left it and Congress changed it. Well, where are you going to draw it, Your Honor? You're going to take it down to the party? Let's start with a government suggestion. We asked the government that question. It's a difficult question to answer. I understand that, but they did give an answer. So tell me what's wrong with that answer. Well, the answer is that that doesn't cover the situations that you want to cover. So he's saying that anybody who's doing something that has a government function of some capacity is going to be held under this statute. Well, you're just passing the ambiguity, in my opinion, from one step to another step. What is then a government function? In this case, it's giving out commercial driver's licenses. Well, this case is that. But, I mean, what about, you know, doing something charitable, doing something that is in a campaign? Well, there may be other things, but my question is what's wrong with that definition? It does appear to cover this situation. Is there something else that's defective about it? To tell me that it's not inclusive enough doesn't explain why it shouldn't cover this one. Well, because, you know, some of these defendants are not doing a government function. My client, maybe you can argue as an independent contractor, is submitting information to the state to issue a driver's license. He does not issue the driver's license. No, he gives the test. He gives the test. It's not a government function. But he gives the test any way he wants to. It's totally in his control how to give that test. No, no, no, he isn't. It can't be that he's given the authority to decide, you pay me enough money and you pass the test. Do you think that's consistent with his responsibility under his contract with the state? Well, you know, that's a loaded question. I would answer yes, but you're not going to like that answer. But if you read the contract, it says conduct and control of the work will be solely with the contractor. Look, the problem with your argument, it seems to me, in practical terms, that the distinction between independent contractors and government employees is arbitrary. Governments contract out quite a lot of their governance now. In Alaska, we have private jails, and we're contracting out also to the state of Arizona, I think. The Defense Department contracts out a lot of what used to be done in the Pentagon to Booz Allen and other private firms that do the defense planning, and then to on-the-ground contractors for supplying meals to soldiers in Iraq and that sort of thing. I think what you're telling me is that any level of bribery and corruption is okay with a government contractor under 1346. Well, this is not a bribery situation. As to honest services. Yes. You wouldn't extend that to things where there's a financial detriment. It's only honest services, correct? No. You know, it's too broad of a brush, and the only bright line that can be drawn, I think, is where Williams and where the district court judge drew it. If there's not an employer-employee relationship, and if there's not a fiduciary or other rising duty of some sort that's similar to that, that is the cleanest way to do it. Did Williams draw that line, or did Williams say it's at least? Williams says it's at least, but I'm not going to go any further than that because we don't have a guideline. I know you're not going to go any further than that. I know, but that's what they're saying. That's what Williams said. But Williams didn't draw a line, did he? It didn't have to go any further than that in Williams, did it? No. Williams said this is a minimum. And it had that minimum. Yes. And it had that minimum before it, correct? It had, I'm sorry. It had the minimum before it. It didn't have to say any more. It had a true fiduciary relationship, period, correct? That's it, yes. So that's not line drawing, is it? Well, I mean, the inference is we don't need to go any further than this, and we're fearful of going any further than this because of all these other problems that are going to arise as a result. The hypothetical that Judge Kleinfeld raised was actually the employee-employer circumstance. So it gets covered, potentially the Christmas party gets covered, and what your client is alleged to have does does not, which both answers seem perverse to me. And it's justified basis, well, we need a limiting principle, so there's a limiting principle. It doesn't sound like a very good limiting principle to me. What makes it sound like a good one to you? Well, because we have to draw the line. We've got to protect the common, everyday contracts that exist out there. And that includes government contracts. There's all kinds of services that the government contracts out. Independent contracting is one of the most valuable tools that this economy has in order to distribute risk. Do you encourage the government's use of outsourcing? If you say action done by an employee is covered and action done by a non-employee is not, isn't that an invitation to license defraud if you're an independent contractor? The government, in this case the state of Washington, has the rights to enforce their own contracts. Thank you, Your Honor. Thank you, counsel. Good morning, Your Honors. Bob Fisher for Mr. Brown and Milovanovich. Your Honors, basically, of course, my argument is that Mr. Milovanovich is so far attenuated as a mere translator in this contractual relationship with the state of Washington that he is. That's not what the indictment says. I think he was taking bribes, according to the indictment, and making bribes. Well, it's his position. Not just translating. Oh, you're saying it's his position as a translator. It's his position as a translator for Spokane International Translation. He technically didn't work for Washington at all. He didn't have a contract with Washington, did he? He had no contract with Washington. He was allowed to translate through testing through the Department of DSHS, but that's the only relationship he had with the state. Who paid him? For his services? The other defendants who were seeking these driver's licenses. No money exchanged between the state of Washington and any of the defendants here. That's part of the manner, methods, and means that deny the agency relationship of any, and that this man, Mr. Lamb, is an independent contractor, and Mr. Milibanovich is removed from that. So I think it boils right down to, and I've sat here and I've listened to your concerns, and I think what it boils right down to is what Mr. Harrington indicated, and what he said it boils right down to is we want to do this on a case-by-case basis, and I think that's what all these cases that I've read. How do we do it on a case-by-case basis concretely? I mean, the way case-by-case basis things are done ordinarily is you have a very broad rule of law, like definition of negligence. You give the jury that instruction, and then whatever they feel like doing under that instruction, whatever seems sensible to them is what's done. I guess with fraud we could just give them the statute as an instruction, let them do whatever they want, let the U.S. attorneys charge whoever they want, and leave it at that, but that's not what the courts have traditionally done with 1346. Correct, Your Honor. Is that what you mean by case-by-case basis? Well, I think that's what Rebicki stands out and clearly says, is that what we don't want to do is give the government carte blanche decision-making over who to charge, when to charge. We have to stick within the strict confines of the case law that is precedent, and case law precedent says that public officials, by the very nature of their obligations to the people at large, owe a fiduciary duty. Well, the Supreme Court, the courts for a long time had, the lower courts, had been cutting back on the way fraud could be charged, and then the Supreme Court did in McNally, and then Congress said, no, no, no, we didn't want to cut back like that, and they amended the statute to add honest services fraud. The Supreme Court has repeatedly told us to look at the common law background. Common law doesn't require a fiduciary duty for fraud. There's all kinds of fraud that the feds charge, like in mail fraud cases, that doesn't involve a fiduciary duty. It's not in the statute. As for requiring employment, it really doesn't square with all the contracting out the government does, and that's probably an efficient thing for it to do. It seems kind of arbitrary. I mean, like Judge Clifton said, you nail the middle manager who lets his employees exchange cookies before Christmas, and you don't nail the cooks that are taking bribes to put dangerous drivers on the road. Your Honor, I think when we get to that, that Williams says at a minimum we're going to require a fiduciary duty. And then I think the judge, Judge Shea, also cited to Frost, United States v. Frost, which wrestled with the idea whether an employee of a state university owed a fiduciary duty. Now, and the court came down and said, yes, it did, because that circumstance the employee protected, had a direction to protect the property. Here we have an independent contractor, and as my co-counsel has indicated, if the court decides that every contract that only carries with it good faith and fair dealings, and that's important, but it doesn't carry with it the higher fiduciary duty of trust and loyalty. Is it problematic? Sure it is. But why fiduciary duty? Because of the, well, fiduciary duty is required so that, again, that public policy demands that federal law does not encompass every. Suppose we had a deputy clerk in the federal courts who was taking bribes to backdate filings so that they wouldn't be late. She is not probably a high enough level employee to owe a fiduciary duty, but it sure is corrupting if we have a deputy clerk who's taking bribes to backdate filings. And I think Elkins found that, that employees, Elkins, which I think it was not in the Ninth Circuit, and I can find the site, but Elkins indicated that a, well, it was the Second Circuit, but it was a New York State employee of the Department of Licensing there. He was, I believe he was providing registration, car registrations for a buck. But he still was an employee, and the courts found that even under that auspice you have as an employee, you have this protection, right? You have, you're imbued with this auspice of protecting state funds. Well, employees very typically are said to have special duties. Employees are kinds of agents. Agents have fiduciary duties. So, you know, you can label it fiduciary or heightened duty of an employee, however you want to say it, but it's not antithetical to say a person's an employee, a low-level employee, and has a fiduciary duty of that nature anyway, is it? And that would be something for the court to wrestle with, but when you go below that, when you drop below that employee relationship with an employer, as some circuits have alluded to, that there is a duty there. In an outsourcing era, is that a place to draw the line? When we now have people who are not employees or independent contractors performing functions that previously were employed by and performed by employees, why should someone as an independent contractor skate when somebody who draws a weekly paycheck does not? Well, and I think that's part and parcel of what comes with outsourcing. Is outsourcing a good idea? It could be bad or good. I don't know. You open yourself up to fraud? Pardon? You open yourself up to fraud? A contractor can get away with a fraud that an employee can't? I think by outsourcing, you open yourself up to a whole lot of problems, but you also open up to a lot of good there, and that is the weighing of the balances where the Department of Licensing in Washington decides, well, we're going to give third-party testers a contract. We're not going to exercise the control, the manner, method, and means of what this person is going to do. We're going to, in fact, we want to stay as far away from this person as possible because he's saying, hey, I'm going to third-party test an 18-wheeler. So the state, in all its good thinking, has decided to outsource this in a way and just cut the relationship off with that person. Then what the government is asking is to jump into each contract so anybody who breaches a contract could be liable under federal law, under the statute, anybody. Thank you. Thank you, Counsel. Good morning, Your Honors. May it please the Court, Tim Durkin, Assistant United States Attorney. Your Honors, I've been wrestling with the issue. I think a lot of the United States, quite frankly, or the various circuits have also wrestled with the limiting instruction, and I think it goes back to materiality, respectfully exchanging cookies within an office would not be considered a material offense. By whom? Well, I suspect it would be a de minimis. Well, you know, in San Bernardino County in California, they prosecuted people for taking phone calls that were private. The oriented phone calls maybe cost the county a couple bucks or two and a half bucks because the statute did prelude it, and that prosecutor said, you know, two and a half bucks is good enough for me. What your limiting principle would preclude an AUSA from saying, oh, well, two and a half bucks is what it costs the state. That's enough. It's not an honest services. We're not into money anymore because really we keep talking about fraud and the fraud good is fraud bad, but the real thing that that statute did was replace money with honest services. So we're not into money anymore. Why isn't two and a half bucks material? Well, it's not an honest service. And by spending money, as you indicated, this is about honest services, so faithfully discharging your work obligations. I think in the human experience and the human nature, getting back to materiality, I think courts would find that that doesn't satisfy the material threshold. I mean, the defense lawyers would say just what you just said to a jury, and then the judge would instruct the jury that any deprivation of honest services is good enough, and the prosecutor would say honest services means you work at your job, you don't talk to your daughter for an hour every day when she calls over and over, and it would be up to the jury. Well, I mean, I think we're missing the first element, and that is a scheme to defraud. There has to actually be a scheme to defraud, and taking a call from your daughter is not a scheme to defraud. Why not? What have you planned? You've told your family, you know what, I'll take calls here. If you've got a problem, call Daddy or Mommy. Just call the office and let us know what's going on, and we'll deal with it, knowing that you're not supposed to be doing private calls. It sounds like a scheme to me. You've got a couple people, and indeed the way the government often charges conspiracy, you've got two people, they've agreed to do something illegal. There is a conspiracy. That's a scheme. Well, and then we go back, was there an intent to defraud? Was it intentionally to take that phone call because you intended to defraud the government and its honest services for that day? Sure, because the moment you take the phone call, you know that you're depriving the government of its time. You know that. You plan it. Well, I guess I would submit, based on practice and custom recognized by this court, and obviously to a certain extent by Judge Shea in his ruling, that would not, I respectfully submit. You're wrong about custom. Judge Fernandez just told you about that county in California, the way Sarah Palin got rid of the chairman of the Oil and Gas Commission in Alaska was the same thing. She successfully accused him of taking calls relating to the political party he was chairman of when he was working in his state office. I think getting back to the phone call and taking a look at that, the employee has certain discretionary, when they become employed or a public contractor becomes employed, there may be certain discretionary functions or decisions they can make throughout the performance of that contract. However, where you have specifically enumerated obligations coupled with a scheme to defraud, I think you now set in the threshold, and then you add the element of materiality, I think you have the framework under which to limit case by case. Let me ask you to refer to the situation of Mr. Milovanovich in particular. He's a step farther removed from Mr. Lamb. He's not being paid by the state. Even though he's doing his job correctly, he's not being paid by the state. What's the state's basis for laying claim to him? A couple of things relative to Mr. Milovanovich. One, he's required to sign documents certifying that he's going to comply with a code of conduct, a code of professional responsibility for every time that he provides interpretation services. He has identified the benefit to him in response to complying with that and take an affirmative oath to do that, as he is identified as an eligible translation provider by the state. That is determined by the state. The company he works for is paid by, obviously, by the people that pay their services. However, Mr. Milovanovich's contract as an independent contractor, the independent contractor of the state, as long as he satisfies that criteria, to faithfully discharge and honestly translate, he becomes an eligible, identified person who can provide those services to the Department of Licensing, Department of Social and Health Services. He is one more step removed than Mr. Lamb. However, he has taken certain ethical code of responsibility obligations in order to be eligible and identified by the state of Washington to provide those translation services honestly. Thank you, Counsel. Thank you. United States v. Milovanovich is submitted.
judges: Fernandez, Kleinfeld, Clifton